Good morning, Your Honor. My name's Eric Weaver. I'm appearing on behalf of Appellant Alcide Melnson. I'd like to reserve three minutes of my time for rebuttal. Your Honor, I think, or Your Honors, I think that this case is an example of how the standards of the AEDPA place a premium on trying to confuse the facts and confuse the law so that the argument can be made that there's no clear applicable precedent and, therefore, that the federal courts should just throw up their hands in face of the case. I think there's really only one reasonable reading of the facts in this case. Juror number three, who was the foreman, who was speaking on behalf of all the jurors, expressed frustration to the judge that juror number nine was expressing reasonable doubts. Juror number nine was not saying that she was trying to apply her previous experiences, the facts of her previous experiences. She was merely saying that she had reasonable doubts about the identifications because of comments made by defense counsel during his closing argument. I think it's also clear what the trial court did here. But she was also certainly taking into account her own knowledge and experience. She was taking it. Her past experience with the police. That's true. But I think that there's nothing impermissible about that. She was also articulating it. She wasn't simply taking it into account in her own mind, but she was using it to persuade her fellow jurors. None of these are necessarily bad, but I think you have to take that into account. Right. That's true. But I think there's a distinction between saying, I think, because I've ---- But when you described what it was she was doing, you didn't even mention that. I'm sorry, Your Honor? When you described what she was doing, you didn't mention the fact ---- facts relating to her past experience. That's true, Your Honor. But when the judge ---- That's the full explanation and the relevant explanation. I think, Your Honor, that the relevant explanation is that when the judge pressed her, the juror number nine repeatedly said, I understand that I can't take facts outside the evidence. What I'm saying is that it rings true to me based on my experience. And so I think that the focusing in on exactly what her concern was, that she thought that the defense counsel's argument made sense in terms of the difficulty of making identifications. I also think it's clear or maybe not clear, but I think it's ---- But what is your complaint, then? In other words, what is the constitutional violation here? Okay. The constitutional violation is that what the judge, the correct ---- I think the correct response for the judge would have been for him to say, you must evaluate the evidence and determine whether you have a reasonable doubt, taking into account your own experience. However, the instruction that he gave here I think is remarkably similar to the instruction that was given in Head v. This judge said, in the pertinent part, you're not to use the facts of any other experience in determining the facts of this case. In Hardgrove, they said, you must determine the value of the services rendered from the evidence that's been offered from you and not from your own knowledge or ideas as to the value of such services. I think those instructions are very similar. The reason that it creates a constitutional violation in this case is because it zeroed in on the reasonable doubts and told Juror No. 9 that her personal experience wasn't a proper basis for reasonable doubt and undermined the defendant's right to have a jury decide, have the prosecution prove their case beyond a reasonable doubt. In Head v. Hardgrove. Head v. Hardgrove was not a constitutional case. But what it was is it defined what the proper scope of a juror's deliberations are, that the juror's deliberations necessarily include bringing their common sense based on their own experience to their evaluation of the cases. So I think the constitutional underpinning here is the right to jury trial? Exactly. The Constitution here, by improperly limiting her consideration of the evidence, it impinged on Mr. Melanson's right to a jury trial. I don't know if this is directly relevant because there was a the direct challenges to the instruction. But there was a lot of evidence that she was extremely emotional. And, I mean, it wasn't simply that she was trying to use this information, but that she seemed under enormous stress because of this experience that she had had. Is that relevant at all? I think it is relevant in establishing the overall context. But when the judge focused in on what her concern was, she said very specifically that she thought defense counsel's comments were worth considering, that they rang true to her and found them to be credible. That's found in the excerpt of record page 415 and 416. So when they really focused in on what her concern was, her concern was that she thought that the counsel's arguments about identification were credible and that she felt pressured by the other jurors to make a rush to judgment and not to work through her evaluation of that evidence. And I think that what the trial court did that was improper is that it weighed in on the side of the rest of the jury, rather than telling both of them, look, we know that this is a stressful situation, but each juror has to evaluate this evidence and come up with a decision for themselves about whether they have a reasonable doubt about these identifications. I think what the judge did is he intervened and tipped the scale against that, coerced juror number 9 not to consider the basis of her reasonable doubts, and then in the process took away Mr. Melanson's right to have forced the prosecution to prove beyond a reasonable doubt that he was guilty. But what's so fascinating about this is that the line between there's one set of considerations, which is people can rely on their own experience, and then, of course, there's a line on the other side in which you would think that there was a due process violation if your juror was so influenced by their some particular experience that they weren't able to fairly evaluate the facts, right? I agree. And in this instance, she was awfully – so this is why the fact that she was so emotionally engaged and upset concerned me. I don't know if it's relevant to the issues in this case at the moment because perhaps he could have simply just replaced her as not able to deliberate fairly, but it isn't what he did. That's true. I think that her emotional reaction, I think a fair reading of the record, is the reason she was so emotional was because she felt like everyone was ganging up on her. She said that people were saying, oh, God, and things like that under their breath every time she expressed her reservation. So I don't think it was her emotions were affecting her because of her evaluation of the facts. I think it was her emotions were affecting her because she felt ganged up on by the rest of the jury. You just said a minute ago that the violation was a right to a fair jury. And then a minute ago, another minute ago, you said that it had to do with heightened the state's burden of proof. I think that it's the second. I think that the – right, exactly. I think that the prosecution has a burden of proof beyond a reasonable doubt to all the jurors that he's guilty. She was expressing strong reasonable doubts based on trial counsel's evaluation of the factors relating to identification. She felt ganged up on by the jury, and I think the judge joined the rest of the jury to pressure her to abandon those doubts. I only have a short amount left. I'd like to save it for rebuttal unless the Court has further questions. Morning, Your Honors. Eric Brunkle from the Attorney General's Office. I guess I see the facts differently. I see the facts more the way the Court of Appeals saw the facts. I see the facts more in the way that the district court in this case saw the facts. And I don't see Juror 9 expressing reasonable doubts. When I read the record and when I read the opinions of the Court of Appeal and the district court, what I see is that Juror 9 was upset with the fact that the rest of the jurors wanted to rush to judgment. In fact, she says that. And she was stressed because it was going to take her more time to come to a decision in this case. Juror 3 was the foreman of the jury, and from what we can tell from the record, was a conscientious foreman and had apparently gone home after the first night of deliberations and tried to figure out a way in his own mind that they could get through these 17, 18, 19 charges of robbery more efficiently, and to me that means faster. And maybe when he presented those ideas to the jury the next day, some of them liked it, some of them didn't. I mean, they were going to ---- All of that may be true, but it doesn't seem to have to do with where the focus is in this case at this point, which is that at least part of the concern with her, which Juror 3 expressed, was that she was bringing up her ---- this former experience, and she explained that that was part of why she was thinking what she was thinking, but there were other reasons as well, because she had thought this before. And then the judge gave her some instructions, and that's what we're dealing with. All right. Well, the judge told her not to consider the facts of her prior experience, her prior victimization, to determine the facts of this case. That's all the judge told her, and that's proper. You told her not to use the facts of any other experience in determining the facts in this case. Which is consistent on its face. I think it's simply just a corollary to the instruction that all the jurors were given to decide all questions of fact in this case from the evidence that was received at trial. What does it mean that you can consider your experience, but you can't consider the facts of your experience? Well, in her assault, she was hit over the head. Yeah. But that isn't what she was talking about, I mean, as I understood it. What I understood her to be talking about was that she thought she had learned something about the vagaries of identifying somebody. Yeah. I think you're right. And what I understood she'd be saying is that confirmed what she'd thought before. It isn't that this was the first time she'd thought it, and she was using that experience both in her own mind to evaluate what the defense counsel was saying and also to explain to other people. And could she not have understood the judge to be telling her to stop doing that? Was the judge telling her to stop doing that? Well, she could have, but I don't think she did, because if she would have understood the judge's instruction that way, they wouldn't have deliberated for another. I don't understand. That's the question I tried to ask you, which is what's the difference between using your experience, which you're allowed to do, and using the facts of your experience? What does that mean? Well, I guess one way that I could answer that is by saying that maybe she could consider her own experience and her difficulty in identifying the perpetrator in her case, but maybe she shouldn't bring those facts out and start discussing her assault and her crime with the other jurors. So we have a substantive question, which is, is there something – is that, in fact, a violation of the – is it appropriate to tell a juror not to do that? Or is one of the functions of jury trials to have people discuss in whatever way makes them comfortable why they understand what they understand? But it's not only discussing. It's not to use them in coming to your decision. The instruction was not to use it in determining the case. I think what the instruction was was very specific, not to use the facts of her case to decide the facts of this case. Not to decide in determining. In determining. Yes. He never – Which is what you do, which is, as a juror, you determine the outcome of the case. So when you're not to use the facts of your experience in determining the facts of the case, that means – I don't know the difference between that and not using your experience in determining the facts of the case. Well, what's the difference? I'm not sure if I can articulate the difference, but neither the court of appeal nor the district court found that that's what this court's instruction told the juror. Well, we can all read plain English. It's not – it takes no great skill to be on any other court to read the sentence. You can read it as well as we can. And I'm asking you, and you're not sure how that comports with the idea that you can use your experience in determining the facts of the case. Well, I think – Whatever the other juror said, I don't know what that means. I don't know the difference. And I'm asking if you can help. I think that – Between using my experience in determining the facts of the case and using the facts of my experience in determining the facts of the case. Well, I think she could – I think it was still allowable for her to discuss with the other jurors her concerns about eyewitness identification, and that many of the witnesses in this case said, I'm 100 percent positive this was the perpetrator, and certainly all the evidence points to the fact that he's a perpetrator. But she might say, look, you know, nobody can ever be 100 percent certain. I certainly wasn't in my case. But in her case, the police – she said she was really stressed out by the police trying to force her to make identifications at the photo lineup. I think it would have been improper for her to assume that all 27 witnesses in this case who were asked to identify the defendant, either at a photo lineup or at a live lineup, were pressured by the police to make this identification, and that therefore the identification was somehow less credible or that they had some amount of difficulty because of that stress, just because she felt that when she was pressured by the police. And this particular juror had a very emotional time deciding this case. As Justice Berzon pointed out, she may have had a very emotional time when the police were pressuring her to identify her own attacker. I think it would have been very improper for her to assume or to argue or to bring up in deliberations, yeah, my personal experience was police pressure everybody. When there was no evidence in this case – How about my personal experience is that the police sometimes pressure people? Well – Not pressure everybody. Is there something wrong with saying my personal experience is that sometimes police pressure people? Well, was there any testimony in this case by any of the witnesses that they were pressured? I mean, I think that – There's also the consideration here of intrusion into the jury's liberation process, because we are sitting here now and hypothesizing about what was said in the jury room and how much the judge was authorized or ought to be authorized to inquire or interfere in that. At this point, it doesn't seem to me to be relevant exactly what was said, but whether the jury's – the judge's instruction precluded her or could have precluded her from a legitimate strain of – and a desired or protected strain of jury deliberation. And the question is why didn't it? I don't think it did. I'm really running short on time. Let me give you my answer real quick. When he sent the foreman back in after he talked to the foreman on the second day of deliberations, he said, look, you need to give this juror an opportunity to express her views, and told him that some jurors take more time to decide the case than others. But he didn't tell him, and I don't think this is being requested now, but he didn't tell him, and if she wants to express her views with reference to something that happened to her, that's okay too. That's the only thing they were talking about. That's the only – Well, no, that isn't so. In fact, your whole presentation has been that it isn't so, that there were other issues about speeding her up and so on. Right. But she – the only thing we can – on the next day she came in and said that she was still feeling stressed, she was still feeling some pressure from the jury, the other jury members, but that she – when pressed by the trial court, she admitted that she still felt that she could deliberate. That indicates to me that she was still deliberating, she was still making her views known to the other jurors, and that she did understand the trial court's instruction that her views were still relevant in the jury room, and that she was still expressing those views. Now, her views on witness credibility and eyewitness credibility, certainly at the start of deliberations, are something that the other jurors would want to confront her on, and certainly there's going to be a lot of give and take when you're in the jury room. That's stuff that the jury needs to talk about. It's stuff that is evidenced from the record that we have, as brief as it may be, are issues that the jury was talking about in this case. That's part of deliberations. Certainly when we allow a jury to deliberate, we don't just send them in the room and ask them to take one vote, and if they don't agree, it's done. You know, these are credibility issues, issues of fact that the jury needs to talk about, and the jury needs to decide these credibility issues, and certainly when one juror feels that some of the eyewitness' identifications may not be as credible as others, that's stuff that the jury needs to talk about. That's what we have evidence that they were doing here. We have evidence that the jury process worked in this case, that the defendant in this case got a jury that was fully deliberating witness identification, credibility, and important factors. He was not deprived of his jury trial in this case. No, he wasn't. In fact, he had a jury that deliberated a half day, a full day, a full day, and another half day for three full days, which is all he can ask for.  Thank you, counsel. I believe the court's questions actually show the difficulty in this case, is that there's no way to distinguish from the court's instruction between what she was allowed to do and what she wasn't allowed to do, the proper purposes of her deliberation and the improper purposes. I think that shows why the California Court of Appeals' decision was unreasonable in this case, and I would encourage the court to look at the reasoning of the California Court of Appeals at page 42 of the excerpt of record. What they did is they sidestepped the question that this court has posed, and instead they, again, speculated. Well, she may have been assuming that because she was clonked on the head, they were clonked on the head here, or she may have assumed that the police pressured the jurors there because she felt pressured, but she specifically said that's not what concerned her. What concerned her was the closing argument of the counsel about identification, and that in light of her own experience, that seemed to be credible to her. I also think that in terms of the fact that the, you know, the argument that they continued to deliberate, when the court came out again, the second day when she came out, the court again reiterated, albeit in a less direct way, it's concerned that she shouldn't consider factors outside of this case. She said, well, they're giving me pressure about my prejudice about this case. Is that based on your assessment of the facts of this case or outside factors, going back to his original instruction? So I think he reinforced his statement to her that she shouldn't consider her past experience. I think unless the Court has questions, that the questions of the Court show that the issues focus stand on. And I thank you for your attention. Back to the question that Judge Breyer and Judge Grissom asked, what the violation is. The violation is that it limited the jurors' ability to decide this on the basis of reasonable doubt. Is that your theory? I think with respect to Juror No. 9, the impact of the instruction, Juror No. 9 expressed what the basis of her doubts were at that point. I think the instruction told her that her basis, those doubts and the basis of those doubts was improper. I'll concede that it may have left her open to come up with other doubts, but it told her that the doubts that she had expressed were improper. I think that the Head v. Hargrove case shows what the scope of deliberation is. This Court has cited that case recently in both civil cases and criminal cases, so it's not like this definition of the scope of a juror's deliberation is something from the murky past that's been lost. It gets cited now and again when there's a question about whether the jurors improperly considered extrinsic evidence, which was the judge's concern here, or were just bringing their own experience to the case. So I think the effect was to say, well, you may have those doubts, but those doubts are improper. You're free to have other doubts if you want. But I don't think that it was what I think the issue in this case was, is it was improper for the Court to say that that basis of her doubts about the identification was improper, and therefore it infringed on Mr. Melanson's right to have, to require the prosecution to prove its case beyond a reasonable doubt as to juror number nine. Thank you, Jeff. Thank you very much. The case just argued will be submitted. Next case for argument is Gann v. Ayers. Good morning. If it pleases the Court, my name is Michael Bigelow, and I represent John Gann.
judges: Reinhardt, Paez, Berzon